IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DEAULLANDY GORAN COLEMAN, JR, )
            )
     Plaintiff,       )
            )
v.              )     Civil Action No. 1:18-cv-931 (AJT/IDD)
            )
SGT. JONES, *et al.*,      )
            )
     Defendants.     )
_____ )

## MEMORANDUM OPINION AND ORDER

This action is brought by Plaintiff Deaullandy Goran Coleman, Jr., a former inmate at the

Henrico County Jail[1] ("Henrico"), against Defendants Major Sandra Johnson ("Major Johnson"),

Sgt. Josie Jones ("Sgt. Jones") and Chaplain Gerald Schwartzlow ("Chaplain Schwartzlow")

(collectively, "Defendants").[2]  During his time at Henrico, Plaintiff alleges the Defendants

interfered with Plaintiff's right to free exercise of his religion, disadvantaging him relative to

inmates of other faiths at Henrico.  [Doc. No. 37] Second Amended Complaint ("SAC") ¶ 1.

Specifically, Plaintiff alleges (1) violation of the Religious Land Use and Institutionalized

Persons Act of 2000, 42 U.S.C. § 2000cc *et seq*. ("RLUIPA") for lack of meals that conformed

to his sincere religious beliefs (Count I); (2) violations of the United States and Virginia

Constitutions to freely exercise his faith (Counts II and V); (3) violations of the United States

and Virginia Constitutions to be free from the establishment of religion (Counts III and V); and

(4) violations of the United States and Virginia Constitutions to the equal protection of the laws

(Counts IV and VI).

---

[1] Coleman is now incarcerated at a Commonwealth of Virginia Department of Correction facility.
[2] The Court has dismissed Defendant Schwartzlow from the action with prejudice upon the parties' joint motion to dismiss. [Doc. Nos. 77, 78].

On May 22, 2020 Defendants renewed their Motion for Summary Judgment [Doc. No. 63] (the "Motion") and Plaintiff filed an Opposition to the renewed Motion for Summary Judgment [Doc. No. 66] on June 5, 2020.  For the following reasons, the Defendants' Motion for Summary Judgment is GRANTED.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

At the time of the events relevant to this action, Plaintiff Coleman was an inmate housed at the Henrico County Regional Jail ("Henrico").  [Doc. No. 64], Defs' Mem. in Support of the Mot. for Summary Judgment, ("MSJ"), Statement of Undisputed Facts ("Defs' SUF"), ¶ 1.  Plaintiff is now incarcerated at a Virginia Department of Corrections facility.  *Id.*  Defendants Major Johnson and Sgt. Jones were employees of Henrico during the relevant time; they were both notified by Plaintiff of his requests for Kosher meals, and both denied those requests.  [Doc. No. 66] at 5.

While at Henrico, Plaintiff self-identified as a follower of the Islamic faith.  Defs' SUF ¶ 2.  At Henrico, inmates who identify as followers of the Islamic faith and request a "Halal" meal are served Halal meals pursuant to a contract between Summit Food Services, LLC ("Summit") and Henrico County, Virginia.  *Id.* ¶ 3.  The Halal meals served to Plaintiff during the relevant time period did not contain meat, although they were compliant with relevant nutritional guidelines.  MSJ at 12, [Doc. No. 64-1] Affidavit of Justin Barthel ("Barthel Aff.") ¶ 12.[3]  Henrico also offers a "regular diet," which contains meat, [Doc. No. 66] at 3 (citing [Doc.

---

[3] The name of meal offered to Plaintiff is disputed.  Plaintiff refers to it as a "Common fare" meal, which the food service contract provides "may be acceptable to inmates whose religious faith prohibits or restricts meat consumption (e.g., Muslim, Buddhist, Hare Krishna, Hindu, etc.)," is vegetarian.  [Doc. No. 66-7] at 72; *see also* [Doc. No. 66-3] Jones Dep. 37:16–38:3.  Defendant refers to it as a "Halal meal."  MSJ at 12.  Plaintiff asserts that the diet manual portion of the food service contract does not set forth a specific "Halal diet" of any kind.  *See* [Doc. No. 66-9] Barthel Dep., at 51:18–22.  Rather, Sgt. Jones explained that when a vegetarian diet is provided to a Muslim inmate, Jail staff simply call it the "Halal diet."  Jones Dep. 39:16–18, 41:17–20.

No. 66-3] Deposition of Sgt. Josie Jones ("Jones Dep.") 34:1–6, 36:7–16, and a Kosher diet, which contains meat as well, [Doc. No. 66-7] at 67.  Inmates are allowed to choose a religious-specific meal that conforms to their religious affiliation, but are not allowed to choose a religious-specific meal for a reason other than their own sincerely held religious belief.  [Doc. No. 64] at 13. Defendants assert that Henrico does not serve Kosher meals to inmates who do not identify as followers of the Jewish faith, Defs' SUF ¶ 4, while Plaintiff asserts that Muslim inmates other than Plaintiff have been provided Kosher meals at Henrico in the past, *see* [Doc. No. 66] at 8 (citing [Doc. No. 66-19] at 4 (copy of civil rights complaint filed by different Muslim inmate, asserting that he had been "prescribed a Kosher diet by Lt. Hoffman of Henrico Jail" in March 2015, but was denied that diet by Sgt. Jones after he was transferred to Henrico Jail East)).

The parties agree that the Halal diet requires some specialized requirements for meat to be considered "Halal" under Islam; however, the parties dispute whether Kosher meals could satisfy the requirements of Halal in the prison setting. *Compare* [Doc. No. 64-1] Barthel Aff. ¶ 10 ("While the dietary restrictions for each have similar restrictions on certain ingredients, such as shellfish or pork, each is specifically prepared and tailored for members of their respective faith."), *with* [Doc. No. 66], Pl's Statement of Undisputed Material Facts ("Pl's SUMF") ¶ 1 ("Many Islamic scholars and jurists view food prepared according to Kosher standards to be permissible for Muslims to eat. This is especially true where, in the West for example, Muslims may find it difficult to access Halal meat. When facing such a challenge, the consensus among Islamic scholars and jurists is a Muslim may consume Kosher meat so long as he or she utters the divine name of Allah before eating. "This would certainly be true in the prison context where an

inmate's food choices are even more limited." (citing [Doc. No. 66-17] Faghfoory Decl. ¶¶ 8–11)).

Additionally, Plaintiff asserts, and Defendants do not dispute, that Summit can provide to customers meals that are dual certified as Kosher and Halal. [Doc. No. 66-10] Barthel Dep. at 53:15–54:3. Barthel also stated that Summit has provided Kosher meals to Muslim inmates for other food service customers. *Id.* at 77:10–22. In those situations, Summit provided meals with meat that was dual certified. *Id.* at 78:1–11. In fact, Sgt. Jones recalled seeing Kosher meals served at Henrico County Jail labeled as both Kosher and Halal certified. Jones Dep. at 87:10–88:2, 88:3–7.

To provide an additional Kosher meal, Defendants need only increase the number of Kosher meals by one, and the Kosher meals arrive frozen and pre-packaged. Jones Dep. at 144:2–13; [Doc. No. 66-4] Deposition of Major Sandra Johnson ("Johnson Dep.") at 62:1–63:5. All meals are set at the same price under the food service contract with Summit. [Doc. No. 66-6] at 4.

**Plaintiff's Requests for Kosher Meals**

On April 23, 2018, Plaintiff spoke to Sgt. Jones and requested the Kosher diet after receiving the Halal diet for a few days. SAC ¶ 24; *see* [Doc. No. 38] Answer ¶ 24. He believed that the Kosher diet would satisfy Islamic religious requirements and would also include meat, which would allow him to get enough to eat. Jones Dep. 44:13–14, 83:3–13, 83:21–84:2.[4] He again requested the Kosher diet on May 16, 2018. [Doc. No. 66-13]. His requests were denied

---

[4] In the portion in this range omitted by Plaintiff in support of his position, Sgt. Jones was asked "did [Plaintiff] give you any reason why a kosher diet designed for Jewish inmates would be okay for him to eat as a Muslim inmate?" She responded, "No, sir. He didn't. He didn't have any reason. He just said it was more food than the -- what we were serving on the halal tray. -- say that I'm Jewish, or you know." However, Defendants do not dispute that they were informed that Plaintiff believed that the Kosher meal would be allowable for him to eat under his Muslim faith.

4

on May 23, 2018 because Plaintiff is not Jewish.  Jones Dep. 44:14–18, 82:21–83:2, 86:8–11; [Doc. No. 66-12].

One week later, Plaintiff spoke to Major Johnson about his request for the Kosher diet. SAC ¶ 28; Answer ¶ 28.  Major Johnson also denied Plaintiff's request because he was not Jewish.  SAC ¶ 29; Answer ¶ 29; Johnson Dep. 56:10–12, 58:8, 79:7–12.  Finally, in early June 2018, Sgt. Jones denied another request from Plaintiff for the Kosher diet because "we don't serve Muslim kosher meals."  [Doc. No. 66-16]; Jones Dep. 108:20–109:9.

The Sheriff's Office policy states that the staff will make reasonable efforts to facilitate inmates' free exercise of their religion.  [Doc. No. 66-5].  Plaintiff asserts that Sgt. Jones and Major Johnson never elevated concerns to supervisors who could change the policy or practice or make an exception, which was an option for them.  *See* [Doc. No. 66-18] Deposition of Lieutenant Green ("Green Dep.") at 96:9–97:18, 107:14–108:14.

**Physical and Mental Effects**

The parties disagree regarding the effects of the meatless Halal diet on Plaintiff's physical condition.  Plaintiff alleges that the diet "left him undernourished, bony, and feeling weak and unbalanced."  [Doc. No. 66-14] Plf's Responses to Defs' First Set of Interrogatories, at 7–8.  Plaintiff asserts that "Muslims, including Mr. Coleman, generally believe that the absence of meat in one's diet will cause certain physical and psychological damage such as the weakening or loss of hearing and vision, and the loss of control over one's temper."  [Doc. No. 66-14] at 7.  He experienced significant bowel pain and discomfort, and lost 15 to 25 pounds during his incarceration at the Henrico County Jail.  *Id.*; [Doc. No. 66-13]; [Doc. No. 66-15] (redacted medical records).

Defendants provided more complete medical records from Plaintiff, which indicate that he lost 15 pounds while "in the watch cell," as noted in August 2019. The medical records indicate that Plaintiff was not eating while he was on suicide watch, [Doc. No. 66-15] at 5, and more than once participated in a hunger strike because of his despair over the long prison sentence he faced. [Doc. No. 74] at 20, 21. Additionally, Defendants assert that the records support that they were never notified that Plaintiff's ability to pray was impacted or that he was experiencing severe health issues due to the diet he was receiving. [Doc. No. 71] at 3–4.

**Procedural Background**

Plaintiff brought this action *pro se* on July 26, 2018. [Doc. No. 1]. Defendants originally filed a Motion for Summary Judgment and Brief in Support on February 5, 2019. *See* [Doc. No. 16, 17]. On September 24, 2019, counsel entered an appearance on Plaintiff's behalf and filed a Motion to Deny Defendants' Motion for Summary Judgment the same day. [Doc. No. 29]. Defendants' Motion for Summary Judgment was ordered denied without prejudice for refiling on September 25, 2019. [Doc. No. 33]. On November 19, 2019, Plaintiff filed a Second Amended Complaint. [Doc. No. 37]. On May 22, 2020, Defendants renewed their Motion for Summary Judgment. [Doc. No. 63]. On June 5, 2020, Plaintiff then filed an Opposition to the renewed Motion for Summary Judgment. [Doc. No. 66].[5]

## LEGAL STANDARD

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986);

---

[5] On June 22, 2020, Plaintiff filed a *pro se* Motion to Strike Counsel [Doc. No. 90] and the next day, his counsel filed a Motion to Withdraw as Counsel [Doc. No. 91]. The Court granted those motions. [Doc. No. 98]. Accordingly, Plaintiff is again proceeding *pro se.*

*Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996). The party seeking

summary judgment has the initial burden to show the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and

supported, the opposing party has the burden of showing that a genuine dispute exists.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). To defeat a

properly supported motion for summary judgment, the non-moving party "must set forth specific

facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247–48. Whether a

fact is considered "material" is determined by the substantive law, and "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." *Id.* at 248. On a motion for summary judgment, the facts shall be

viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party.

*Zenith*, 475 U.S. at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## ANALYSIS

### A. Mootness

In the first instance, some of Plaintiff's claims are moot. Plaintiff has been transferred

from Henrico, and a prisoner's transfer moots claims for declaratory and injunctive relief when

the conditions of confinement which form the basis for the prisoner's claims are unlikely to

recur. *See Williams v. Griffin*, 952 F.2d 820 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047,

1048 n.1 (4th Cir. 1986). Moreover, because RLUIPA does not provide for damages against

Defendants in their official or individual capacities, Plaintiff has no remaining remedy available

under RLUIPA. *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (individual capacity);

7

*Wall v. Wade*, 741 F.3d 492, 496 n.5 (4th Cir. 2014) (official capacity).  Indeed, Plaintiff

acknowledges that his claims for injunctive and declaratory relief, and therefore his claims under

RLUIPA, are moot.  [Doc. No. 66] at 22.  Therefore, Count I, and any remaining requests for

declaratory and injunctive relief, are dismissed as moot.

## B. Free Exercise Clause[6]

The Free Exercise Clause requires prison officials to reasonably accommodate an

inmate's exercise of sincerely held religious beliefs, U.S. Const. Amend. I,[7] and to state a claim

for violation of rights secured by the Free Exercise Clause, an inmate must demonstrate that: "(1)

he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden

on his ability to practice his religion." *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018).

First, the plaintiff must show that the prison's policies or actions "imposed a substantial

burden on his exercise of sincerely held religious beliefs." *Wright v. Lassiter*, 921 F.3d 413, 418

(4th Cir. 2019) (citing *Carter v. Fleming*, 879 F.3d 132, 139–40 (4th Cir. 2018)).  The Fourth

Circuit has explained that a substantial burden:

> is one that put[s] substantial pressure on an adherent to modify his behavior and to violate
> his beliefs, or one that forces a person to choose between following the precepts of h[is]
> religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of
> the precepts of h[is] religion . . . on the other hand.

*Couch v. Jabe*, 679 F.3d 197, 200–01 (4th Cir. 2012) (quoting *Lovelace v. Lee*, 472 F.3d

174, 187 (4th Cir. 2006)).  Where a prison removes an inmate's privileges to compel compliance

---

[6] To state a cause of action under 42 U.S.C. § 1983, a plaintiff must establish that he has been deprived of rights
guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct
committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988).  Defendants do not
dispute that they were acting under state law in the scope of their employment at Henrico.  Further, Plaintiff must
have exhausted his administrative remedies, *see* 42 U.S.C. § 1997e, which, again, the parties do not dispute that he
has done so.

[7] The Virginia Constitution follows the same analysis for the Free Exercise Clause and the Establishment Clause.
*College Bldg. Auth. v. Lynn*, 260 Va. 608 (Va. 2000) (noting that any "claim for violation of the Virginia
Constitution follows our disposition of [] claims for violation of the U.S. Constitution because the protections under
the Virginia Constitution are 'parallel' to those of the U.S. Constitution.").

with behaviors that would violate a prisoner's religious beliefs, even where it does not actually compel the prisoner to so violate those beliefs, that qualifies as a substantial burden. *Id.* at 200–01 (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995–96 (9th Cir. 2005)).

If the plaintiff can make such a showing, the court goes to the second stage, where the plaintiff has the burden to show that the policies are not "reasonably related to legitimate penological interests." *Wright*, 921 F.3d at 418.  To assess whether policies are reasonably related to legitimate penological interests, courts consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. *See Turner v. Safley*, 482 U.S. 78, 89–90 (1987).

### 1. Sincerely-Held Religious Beliefs

First, Defendants dispute that Plaintiff's religious beliefs—that Kosher meals can satisfy the religious requirements of Halal—are sincerely held, arguing that Defendants' religious scholar, Joe Regenstein, disputes these beliefs. *See* [Doc. No. 64-2] ¶ 13 ("The Halal Diet and the Kosher Diet are each derived from specific religious dictate and tradition, and are not the same.").  Further, they indicate that many of Plaintiff's requests for the Kosher meal were based on his interest in eating more meat and less starch, not on his religious beliefs, [Doc. No. 71] at 3, and at least one Defendant indicated that she had never heard from Plaintiff that he believed that the Kosher meal would satisfy Plaintiff's Halal requirements. *See* Jones Dep. 83:3-84:2 ("Q: did he give you any reason why a kosher diet designed by Jewish inmates would be okay for him

to eat as a Muslim inmate? A: No, sir. He didn't. He didn't have any reason. He just said it was more food.").

"The determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task . . . . However, the resolution of that question is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 714 (1981); *see id.* at 715–16 (noting "the guarantee of free exercise is not limited to beliefs which are shared by all of the members" of a religion); *see also Wiggins v. Hoisington*, No. CV 11-967 KG/KK, 2015 WL 13665442, at *5 (D.N.M. Feb. 27, 2015), *report and recommendation adopted*, No. CV 11-967 KG/KK, 2015 WL 13665424 (D.N.M. May 1, 2015) (finding a reasonable fact finder could determine that inmate's "belief, while perhaps not the belief of every observant Muslim, is not 'without any basis whatsoever in the creed or community on which [Plaintiff] purports to rest [his] claim'").

Here, Defendants are asserting that Plaintiff's religious beliefs are not sincerely held because their expert believes that his beliefs are inconsistent with Islam, but Plaintiff's expert asserts that Kosher meals can be consistent with eating Halal, and Plaintiff asserts that he believes that as well. *See* Pl's SUMF ¶ 1. Therefore, there is dispute as to whether Plaintiff's religious beliefs are sincerely held, and a reasonable jury could find that Plaintiff believes that a Kosher meal can satisfy the strictures of eating Halal according to his faith.[8]

---

[8] Plaintiff's argument rests on his belief that Kosher meals can also be Halal, but Plaintiff also mentions that meat may be required for Muslims, *see* [Doc. No. 66] at 12 (citing Faghfoory Decl. ¶ 7 (noting that the "practices and teachings of the Prophet Muhammad direct Muslims to eat meat at least 10-12 times per month")), but does not seem to rest his argument on that basis, nor does he state that his sincerely-held religious beliefs include the need to eat meat, *see id.* (noting that "some Islamic scholars are of the view that Muslims are obligated to eat meat," not that Plaintiff believed he was obligated to eat meat).

## 2. Substantial Burden

Second, Defendants dispute that Plaintiff suffered a "substantial burden" on the exercise of his religious beliefs. Plaintiff argues that he was forced to choose between violating his religious beliefs and eating the regular meal, which had meat, or to continue eating the vegetarian Halal option, which left him "undernourished, bony, and feeling weak and unbalanced." [Doc. No. 66] at 11. Plaintiff asserts that this weakness he experienced interfered with his ability to pray. *Id.* at 12. Defendants dispute that any record evidence, including medical records, demonstrate any physical impact on Plaintiff's health caused by the vegetarian diet, [Doc. No. 71] at 3–4; *see also* [Doc. No. 71] (sealed medical records), and argue that Plaintiff never flagged to the jail staff any issue with his ability to pray. [Doc. No. 71] at 4.

A prisoner has a right under the Free Exercise Clause of the First Amendment to receive a diet consistent with his sincerely held religious scruples. *Ross v. Blackledge*, 477 F.2d 616, 618–19 (4th Cir. 1973). To the Plaintiff's argument that the prison could have provided a Halal-compliant meal with meat through the Kosher option, but chose instead to satisfy the Halal diet with a vegetarian option, courts have generally been reluctant to find a substantial burden exists where inmates are provided religiously-compliant food that contains adequate nutritional content. *See Patel v. United States Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008) (prison's meal plan regulations did not substantially burden Muslim inmate's free exercise rights where inmate had access to only vegetarian entrees, and some of those entrees he had to pay for himself); *see also, e.g., Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1266 (W.D. Wash. 2013), *aff'd*, 639 F. App'x 484 (9th Cir. 2016); *Green v. Ferrell*, 801 F.2d 765, 770–71 (5th Cir.1986) (finding two meals a day sufficient if nutritionally and calorically adequate); *cf. Lovelace v. Bassett*, No. 8:07-cv-00506, 2009 WL 3157367, at *2 n.3 (W.D. Va.

Sept. 29, 2009) (noting that missing 1000 calories per day during Ramadan constituted a substantial burden where plaintiff experienced "bodily discomfort" through hunger pains and headaches).

Certainly, forcing an inmate to choose between "following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand" constitutes a substantial burden. *Couch v. Jabe*, 679 F.3d 197, 200–01 (4th Cir. 2012). Here, Plaintiff was able to eat according to his religion by eating the Halal meals. However, Plaintiff asserts that choosing to follow his religion—eating the Halal meal—caused him significant health issues and made it harder for him to pray, and relies on his medical records and his interrogatories to support his claim that the vegetarian meal caused him to lose 15 to 25 pounds, caused him to have indigestion and become weak, and interfered with his ability to pray.

There remains a significant dispute of fact as to whether Plaintiff's physical health issues and his inability to pray were caused by Henrico's failure to allow him to eat the Kosher meal, and whether those negative effects constitute a substantial burden. Defendants argue that the vegetarian meals were nutritionally sufficient, but Plaintiff asserts that those meals caused him to lose weight, suggesting that they may not have been adequate. Moreover, extreme health effects are not necessary to demonstrate a substantial burden; it is sufficient to show that the Plaintiff was forced to "choose between daily nutrition and religious practice." *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016). Here, a reasonable jury could find that Plaintiff was substantially burdened under the Free Exercise Clause.

### 3. Reasonably Related to Legitimate Penological Interests

Third, the Court must assess whether the policies burdening Plaintiff's free exercise are "reasonably related to legitimate penological interests." To do so, courts consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. *See Turner v. Safley*, 482 U.S. 78, 89–90 (1987).

Here, Defendants argue that there was a rational connection—Henrico was attempting to provide Halal-compliant meals to inmates while maintaining a food service system that can feed hundreds of inmates three meals a day, and Kosher and Halal requirements do not necessarily overlap. However, in response, Plaintiff argues that the third and fourth *Turner* factors would counsel towards finding a Free Exercise Clause violation—Defendants have not provided any reasons why Plaintiff could not get a Kosher meal, besides vague administrative concerns, and the price for a Kosher meal is the same as any other meal and would only require Defendants to increase their request for Kosher meals by one. [Doc. No. 66] at 13–15. Moreover, Summit has dual-certified options that are available if Defendants chose to exercise that option. *Id.*[9] Additionally, the Defendants themselves failed to elevate Plaintiff's concerns, which could have allowed these issues to be resolved without burdening Plaintiff's religious beliefs. *Id.*

The *Turner* factors weigh heavily in Plaintiff's favor. Beyond Defendants' justification that more choice would render the system unsustainable, MSJ at 13–14, they provide no

---

[9] There is also a factual dispute as to whether Kosher meals could be substituted for Halal meals for Muslim inmates.

justification for why Summit could not provide dual-certified meals to both Muslim and Jewish inmates. That minor change would overcome the core issue here, and indeed, the Court would likely not be deciding this case today if Henrico had done just that. The meals would cost the same and would be made available to a somewhat larger group of inmates who would still have to identify as Muslim or Jewish to receive the meals, thereby preventing the slippery slope to an unsustainable a la carte menu where inmates could decide "at whim" their food preference. *Id.*; *see also Washington v. McAuliffe*, No. 7:16-CV-00476, 2018 WL 401903, at \*7 (W.D. Va. Jan. 12, 2018) (finding restriction not reasonably related to legitimate governmental interests where the accommodation is already being provided to other inmates). In short, the administrative burden is so low, and the impact on the functioning of Henrico and the food service so minimal, that a reasonable jury could easily find that the burden to Plaintiff was not reasonably related to any legitimate penological objective.

## C. Establishment Clause

Plaintiff also argues that there are questions of material fact as to whether Defendants violated the Establishment Clause by impermissibly favoring Judaism over other religions, because the Kosher diet was the "lone specially tailored religious diet containing meat." [Doc. No. 66] at 17. The "Common fare" or "Halal" diet served to Muslims and inmates of other religious faiths was vegetarian. Defendants' rebuttal to this claim rests entirely on qualified immunity grounds, which are discussed below.

The Establishment Clause prohibits "one religious denomination [from being] officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). Thus, to pass muster under the Establishment Clause, government conduct "(1) must be driven in part by a secular purpose; (2) must have a primary effect that neither advances nor inhibits religion; and (3) must

14

not excessively entangle church and State." *Moss v. Spartanburg Cty. Sch. Dist. Seven*, 683 F.3d 599, 608 (4th Cir. 2012) (emphasis omitted) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971)). Further, courts must account for the jail's penological interests, noting that the *Turner* factors, discussed above, "appl[y] to all circumstances in which the needs of prison administration implicate constitutional rights." *Shaheed v. Winston*, 885 F. Supp. 861, 868-69 (E.D. Va. 1995), aff'd, 161 F.3d 3 (4th Cir. 1998) (quoting *Washington v. Harper*, 494 U.S. 210, 224 (1990)).

Plaintiff argues and a reasonable jury could agree that there are questions of material fact as to whether Defendants Major Johnson and Sgt. Jones favored one religion over another. Jewish meals were the only religious meals which included meat, while other religious meals, including Halal meals, did not include meat. [Doc. No. 66] at 17. In response to this argument, Defendants have largely failed to provide a reasonable explanation as to why Halal meals with meat, or dual-certified Halal and Kosher meals with meat could not be provided at Henrico Jail, instead solely relying on their claim that they are entitled to qualified immunity. A reasonable jury could believe the unrefuted assertion that Defendants were preferencing Judaism in this manner. Further, a reasonably jury could find that the *Turner* factors, as discussed above, demonstrate that Defendants' provision of meat for Kosher diets and not for other religious diets was not reasonably related to a legitimate penological interest.

## D. Equal Protection Clause

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.[10] To succeed on an equal protection claim, a plaintiff "must first demonstrate that he

---

[10] The Virginia Constitutional claim, VA Const. Art. 1, § 11, which Defendants argue does not allow for a cause of action because the provision is not self-executing, follows the same analysis. Courts have considered claims for

has been treated differently from others with whom he is similarly situated and that the unequal

treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*,

239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to determine

whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

When equal protection challenges arise in a prison context, courts adjust the level of

scrutiny to ensure that prison officials are afforded the necessary discretion to operate their

facilities in a safe and secure manner, regardless of the level of scrutiny that would apply outside

the prison environment. *See Morrison*, 239 F.3d at 654–55. In a prison context, therefore, the

court must determine whether the disparate treatment is "reasonably related to [any] legitimate

penological interests." *Shaw v. Murphy*, 532 U.S. 223, 225 (2001); *see also Personnel Adm'r of

Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (stating that discriminatory purpose "implies that the

decision maker . . . selected or reaffirmed a particular course of action at least in part because of,

not merely in spite of, its adverse effects upon an identifiable group"). The same *Turner* factors

apply as did above.

Plaintiff's Equal Protection claims rest on the same rationale as his Establishment Clause

claims. [Doc. No. 66] at 20. Further, Defendants again do not contest the underlying claims, but

instead claim they are entitled to qualified immunity. Because Defendants do not provide any

rebuttal, the Court finds that a reasonable jury could find that Muslim inmates were treated

differently than similarly situated Jewish inmates at Henrico, and that such differential treatment

was based on intentional discrimination that was not related to any legitimate penological

interest.

---

violations of the equal protection provision of the Virginia Bill of Rights, and so the Court finds this provision to be
self-executing and states a cause of action. *See, e.g., Archer v. Mayes*, 194 S.E.2d 707, 711 (Va. 1973); *Lee v. York
Cty. Sch. Div.*, 418 F. Supp. 2d 816, 835 (E.D. Va. 2006), *aff'd*, 484 F.3d 687 (4th Cir. 2007).

16

**E. Qualified Immunity**

With respect to all claims—and, in some cases, in lieu of arguing that a constitutional violation did not occur, *see* Parts C & D above—Defendants argue that they are entitled to qualified immunity because there was no clearly established right to be given meals with meat in them when there existed a religiously-compliant vegetarian alternative.

Qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that defendants' conduct violated a constitutional or statutory right; and if so, (b) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)). For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Defendants "'can still be on notice that their conduct violates established law even in novel factual circumstances,' so long as the law provided 'fair warning' that their conduct was unconstitutional." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). A "court may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case." *Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016) (internal quotation omitted). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." *Id.*

While Defendants and Henrico could have easily remedied these potential constitutional violations by providing an equally-priced dual-certified meal through Summit, with no administrative burden to the Defendants, the Court cannot find that Defendants would understand that their behavior violated Plaintiff's constitutional rights. Courts have consistently

17

found that inmates are entitled to meals that are consistent with their religious beliefs, *Ross v. Blackledge*, 477 F.2d 616, 618–19 (4th Cir. 1973), but also that there is no right to non-vegetarian meals, *see, e.g.*, *Patel v. United States Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008). Here, Defendants provided Halal meals to Plaintiff, but refused to take the easy step of providing dual-certified meals that would contain meat. In Defendants' views, they were plainly satisfying Plaintiff's religious beliefs that he must only eat Halal, and were satisfying Jewish inmates' beliefs that they must eat Kosher. Though an easy fix was available, the Court cannot say that, at this point, the rights at issue were sufficiently clear that Defendants would understand that they are violating those rights. However, going forward, where the administrative burden is low, or non-existent, Defendants should carefully consider whether burdening Plaintiff's religious beliefs, or providing inconsistent meals to persons of different faiths, is substantially related to any penological interest.

As a final matter, Plaintiff argues that Defendants are not entitled to qualified immunity for the Virginia Constitutional claims because federal immunity only applies to federal claims, and Defendants have not presented any theory of Virginia state immunity that would apply to them. *See* [Doc. No. 66] at 15 n.6 (citing *Viers v. Baker*, __ S.E. 2d __, 2020 WL 2478884, at *3 (Va. 2020)). Defendants do not rebut this assertion in their Reply.[11]

Virginia courts have "consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution." *Rowley v. Commonwealth*, 629 S.E.2d 188, 191 n.2 (Va. App. 2006); *Archer v. Mayes*, 213 Va. 633, 638 (1973) (Virginia Constitution Article I, Section 11 "is no broader than the equal protection clause

---

[11] Defendants also do not assert qualified immunity expressly based on the Virginia constitutional claims, but in their Answer [Doc. No. 38], they assert that they "are entitled to qualified immunity," Affirmative Defenses ¶ 2, which the Court reads as applying to all constitutional claims.

18

of the Fourteenth Amendment to the Constitution of the United States"). Indeed, the analyses under the Free Exercise, Establishment, and Equal Protection Clauses of both the Virginia Constitution and United States Constitution are identical. *See College Bldg. Auth. v. Lynn*, 260 Va. 608 (Va. 2000). Accordingly, though Virginia courts have not expressly ruled whether federal qualified immunity analysis applies equally to state constitutional claims, the Court finds that, because Virginia courts analyze state and federal constitutional claims similarly, and do not provide broader protection for state constitutional claims than federal ones, those courts would apply qualified immunity analysis in the same way. Therefore, for the same reasons discussed above, the Court finds that Defendants are entitled to qualified immunity for the state constitutional claims.

## CONCLUSION

For the foregoing reasons, although genuine disputes of material facts exist, and the Court finds that a reasonable jury could find in Plaintiff's favor on all counts, the Court finds that Defendants are entitled to qualified immunity. Accordingly, it is hereby

ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 63] be, and the same hereby is, GRANTED.

The Clerk is directed to forward copies of this Order to all counsel of record and enter judgment in favor of Defendants pursuant to Fed. R. Civ. P. 58.

**This is a Final Order for purposes of appeal.** To appeal, Plaintiff must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order as required by Rules 3 and 4 of the Federal Rules of Appellate Procedure. A written notice of appeal is a short statement stating a desire to appeal this Order along with the date of the Order

Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by

the Court.

/s/

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
August 26, 2020